UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
GLENN JONES, JR.,

               Plaintiff(s),                     **MEMORANDUM & ORDER**
                                                            CV 04-3492(WDW)

       -against-

GOVERNMENT EMPLOYEES INSURANCE
COMPANY, INC.,
                                 Defendant(s).
------------------------------------------------------------------X

**WALL, Magistrate Judge:**

Before the court is the defendant's motion for summary judgment. For the reasons set forth herein, the motion is granted. The Clerk is directed to enter judgment for the defendant and to close the case. Each party shall bear its own costs.

## BACKGROUND

The plaintiff, Glenn Jones, is a former employee of the defendant, GEICO. The complaint in this action, filed in June 2004 in New York State court, alleges that Jones was fired in January 2004 in violation of New York's anti-discrimination laws. Jones had fallen on ice in the GEICO parking lot on January 22, 2004, the day before his termination, and was fired on January 23, 2004. Putting aside the defendant's reasons for firing Jones, there is little dispute about the underlying facts of this action.

During the course of Jones's employment, GEICO had in place certain policies and requirements regarding its employees' attendance and leave. GEICO claims that Jones received a number of documents setting forth those policies and requirements, including information about the company's Nondiscrimination, Conflict of Interest and Sexual Harassment policies, copies of GEICO's "Fair Workplace Policies," "Code of Conduct," "Associate Handbook,"

"Benefit Handbook," and "GEICO Policies and Acknowledgements." Def. 56.1 Stmt. ¶¶3-10. Jones signed receipts for several of these documents and does not deny receiving the others, although he says that he does not remember getting some of them. Pl. 56.1 Stmt. ¶¶3-10.

The document called "GEICO Policies and Acknowledgments" contained a section that required employees to call in unscheduled absences within 30 minutes of their start times and warned that failure to comply with the requirements would lead to disciplinary action up to and including termination. Mahler Aff., Ex. L, p.6. GEICO has defined attendance standards for its employees, referring to attendance as "dependability." Employees are expected to maintain a dependability rating of 97%. Dependability is calculated by dividing an employee's total hours for the prior twelve months, minus total unplanned/unscheduled leave, by total scheduled hours for the prior twelve months. Mahler Aff., ¶12, Fusco Aff. ¶4, Briton Aff., Ex.B, p.40. According to GEICO, dependability is only affected by tardiness, sick time, "unplanned" vacation and unapproved leave without pay. Fusco Aff., ¶4.

GEICO asserts that Jones had a substantial history of violations of various provisions of the employee requirements, including unreported absences and failing to call in to report absences. Jones does not contest most of the facts of that history, although he does claim not to remember some of the details. *See* parties' Rule 56.1 Stmts. ¶¶18-56. On December 27, 2002, Jones was given a verbal warning that his dependency level had fallen to 94.85% and that further absences could lead to disciplinary action up to and including termination. Fusco Aff. ¶22 & Ex.V. As of May 2003, his dependability level was at 92.3%. His supervisor attests to numerous "reminders" to Jones that he had to call in if he was not going to be at work. Def. 56.1 Stmt. ¶¶43-52. On December 4, 2003, he was issued a written warning for failing to call his

supervisor on four dates and failure to call within 30 minutes of his start time on one date, despite repeated warnings. *Id.* at 53; *see* Fusco Aff. ¶32 & Ex.Y. The written warning contained the admonition that continued violations might result in further disciplinary action up to and including termination. Fusco Aff., Ex. Y. Jones admits that he got the written warning. Pl.56.1 Stmt. ¶53. On December 19, 2003, Jones took an unplanned vacation day. On December 23, 2003, he was given a verbal warning that his dependability was at 94.8% and that further absences could lead to termination. Def. 56.1 Stmt. ¶55. Jones states that he does not recall being so advised on December 19, 2003, but does not overtly deny the warning. Pl. 56.1 Stmt. ¶55. On January 2, 2004, he allegedly went home four hours early, although Jones states that he does not remember doing so. *Id.* ¶56.

On January 7, 2004, Jones was issued another written warning regarding his attendance at work. *Id.* ¶57; *see* Fusco Aff., Ex. AA. The warning stated that he had been orally warned on December 23, 2003 that his dependability rating was at 94.8% and that any further absence would lead to disciplinary action, up to and including termination. The goal for Jones set out in the warning was that he not have any unexcused or unapproved absences for the next ninety days. The warning plainly stated that failure to meet that goal would "result in further disciplinary action, up to and including termination." There is no indication in the record that Jones contested or questioned any of the allegations set forth in the warning.

Jones fell in the GEICO lot on January 22, 2004. No one at GEICO told Jones that he did not have to call in the next day, a fact that Jones admits. Pl. 56.1 Stmt. ¶65. He did not call in on January 23, 2004, and was fired on that day. The defendant asserts that he was fired for his failure to follow the rules, despite repeated warnings.

3

The plaintiff's version of the events of January 22 and 23, along with undisputed facts taken from documents in the record, is as follows. On January 22, 2004, Jones slipped and fell on the ice in the GEICO parking lot. *See* Pl's 56.1 Stmt. ¶59. He reported to the GEICO nurse's office where he spent approximately three and a half hours and completed an accident report. At approximately 9:30 a.m., he went to the hospital. As he was being carried away on a stretcher, the nurse told him that he should not return to work until the workers' compensation doctors told him to. He was told at Syosset Hospital that he had a sprained ankle and was given a work release form stating that he could return to work on January 25. Briton Aff. Ex. C. The time on his discharge form was 11:31 a.m. *Id.*

Jones called GEICO at 3:30 p.m. that day. He states that he spoke with a male supervisor who told Jones that Jones's usual supervisor, Ms. Fusco, was not in, but that if the release form from the hospital said that Jones did not have to come into work until a certain date, Jones shouldn't worry about coming in until that date. Jones Dep. 178:20-180:11. The supervisor also told him that the return date would be changed when Jones saw his own doctor. Jones admits that although the nurse and the male supervisor both told him that he did not have to report to work the next day, no one told him that he did not have to call in. Jones Dep. 182:4-183:7.

Jones did not report in at 6:00 a.m the next day, nor did he call. His supervisor, Christine Fusco, called him at home. He says that she called to ask him why he had not come in to work and later asked him why he had not called in on that day. He explained that the nurse had told him that he didn't have to come back to work until the workers' compensation doctor said so and that the hospital release papers said he didn't have to go back to work until January 25. No one, he admitted, ever told him that he didn't have to call in. Ms. Fusco told him that he was

4

supposed to call in by 6:30 a.m. whether he had to come in or not. Later that day, Ms. Fusco called Jones back and told him that he was terminated for not calling in. Pl. 56.1 Stmt. ¶70

Jones asserts that his discharge was due to his alleged disability and was in retaliation for filing a Workers' Compensation claim. *See* Complaint. GEICO takes the position that Jones was fired for failing to call in to report his absence, in violation of GEICO's Leave Policy, and despite being on a written warning regarding absences without leave and other offenses. GEICO also argues that the disability discrimination claim must be dismissed as a matter of law because the plaintiff cannot make out a prima facie case of discrimination, and even if he could, there is no evidence that GEICO's purported reasons for firing Jones were pretextual. GEICO further argues that the Workers' Compensation claim must be dismissed for lack of subject matter jurisdiction. The plaintiff argues, *inter alia*, that material issues of fact exist that require denial of the motion.

## DISCUSSION

### A. Summary Judgment Standards

"'Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law.'" *Jamaica Ash & Rubbish Removal Co. v. Ferguson,* 85 F. Supp. 2d 174, 180 (E.D.N.Y. 2000) (quoting *In re Blackwood Assocs., L.P.* 153 F.3d 61, 67 (2d Cir. 1998) and citing Fed. R. Civ. P. 56(c) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In deciding a summary judgment motion, the district court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the opposing party. *See Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,* 150 F.3d 132, 137 (2d Cir. 1998). If there is evidence in the record as to any material fact from

which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *See Holt v. KMI-Continental, Inc.,* 95 F.3d 123, 128 (2d Cir. 1996). The applicable substantive law determines which facts are critical and which are irrelevant. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986).

The trial court's responsibility is "'limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution.'" *B.F. Goodrich v. Betkoski,* 99 F.3d 505, 522 (2d Cir. 1996) (quoting *Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1224 (2d Cir. 1994)). When, however, there is nothing more than a "metaphysical doubt as to the material facts," summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "Rather, there must exist 'specific facts showing that there is a genuine issue for trial' in order to deny summary judgment as to a particular claim." *Jamaica Ash & Rubbish,* 85 F. Supp. 2d at 180 (quoting *Celotex,* 477 U.S. at 322). A moving party may obtain summary judgment by demonstrating that little or no evidence may be found in support of the non-moving party's case. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Marks v. New York Univ.,* 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999).

"[T]he summary judgment standard applies with equal force to discrimination cases as it does to other cases." *Faruq v. Wal-Mart Stores, Inc.,* 2006 U.S. Dist. LEXIS 4676, *12 W.D.N.Y. Jan. 23, 2006). "The salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to commercial or other

areas of litigation." *Ashton v. Pall Corp.*, 32 F. Supp. 2d 82, 87 (E.D.N.Y. 1999) (quoting *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir. 1985) (additional quotation marks omitted)). Of course, evidence of discrimination is rarely overt, and in discrimination cases, a "trial court must be cautious about granting summary judgment to an employer when . . . its intent is at issue." *Gallo,* 22 F.3d at 1224. "Because direct evidence of intentional discrimination is rarely available, affidavits, depositions, and other evidence 'must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.'" *Birdsong v. City of New York,* 2005 U.S. Dist. LEXIS 29058, *6-7 (E.D.N.Y. Nov. 22, 2005) (quoting *Gallo*, 22 F.3d at 1224). A court must "also carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture." *Bickerstaff v. Vassar Coll.,* 196 F.3d 435, 448 (2d Cir. 1999).

Thus, "[t]hough caution must be exercised in granting summary judgment where motive is genuinely in issue . . . [it] remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.,* 109 F.3d 130, 135 (2d Cir. 1997) (internal citations omitted).

**B.) Jones's Workers' Compensation Claim:**

The defendant argues that claims pursuant to New York Workers' Compensation Law §120 may be heard only by the New York State Workers' Compensation Board. *See* Def. Mem. at 18 (citing N.Y. Workers Comp. Law §120; *Burlew v. American Mut. Ins. Co.,* 63 N.Y.2d 412 (1984); *Williams v. Brooklyn Union Gas Co.,* 819 F. Supp. 214, 230-31 (E.D.N.Y. 1993)). The plaintiff does not dispute that assertion, and the court finds that no claims based on violation of the Workers' Compensation Law or retaliatory discharge based on the filing of a Workers'

Compensation Claim can be pursued in this court. *See Williams,* 819 F. Supp. at 231. Thus, to the extent that the Complaint intended to assert claims pursuant to the Workers' Compensation Law (*see, e.g.,* Compl. ¶13), such claims are dismissed without prejudice to renewal in the appropriate forum.

**C.) The Disability Discrimination Claim:**

The plaintiff also claims that he was discriminated against based on his disability, in violation of the New York Human Rights Law ("HRL"), Executive Law §296 (1)(a). *See* Compl. ¶14, 17. Discrimination claims pursuant to the HRL are analyzed under the terms set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). *See Reeves v. Johnson Controls World Servs., Inc.,* 140 F.3d 144,157 n.9 (2d Cir. 1998). Under McDonnell Douglas analysis, the plaintiff bears the burden of first establishing a prima facie case of discrimination, which creates a presumption of discrimination. The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its acts. Once this reason is established, the presumption is lost, and the burden shifts back to the plaintiff to show that the reason offered by the defendant is a pretext. *See Faruq*, 2006 U.S. Dist. LEXIS 4676 at *13-14 (internal quotations and citations omitted). Here, GEICO argues that Jones cannot make out a prima facie case of discrimination, and, even if he could, there is no evidence that GEICO's purported reasons for firing Jones were pretextual. The court turns now to those arguments.

**1.) Jones's Prima Facie Case against GEICO**

To make out a prima facie case of discriminatory discharge due to a disability, Jones must establish that: (1) he has a disability within the meaning of the statute; (2) his employer is covered by the statute; (3) he could perform the essential functions of his job, with or without

reasonable accommodation; and (4) he was fired because of his disability. GEICO argues that Jones cannot establish a prima facie case of disability discrimination pursuant to the New York Human Rights Law because he was not disabled within the meaning of that law and cannot prove that he was fired because of his alleged disability.

The definition of disability is broader under the HRL than it is under the Americans with Disabilities Act.[1] *See Reeves*, 140 F.3d at 154-57. The HRL defines disability as follows:

> The term "disability" means (a) a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques or (b) a record of such an impairment, provided, however, that in all provisions of this article dealing with employment, the term shall be limited to disabilities which, upon the provision of reasonable accommodation, do not prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation sought or held.

N.Y. Exec. L. §292(21) (McKinney's 2005).

GEICO argues that the requirement that an employee must be able to perform job duties "in a reasonable manner" is the equivalent of the third element of an ADA claim, which requires a plaintiff to show that he or she is a "qualified individual with a disability." Def. Mem. at 8 (citing *Shannon v. New York City Transit Auth.,* 332 F.3d 95, 103 (2d Cir. 2003)). Under the ADA, a plaintiff is not a "qualified individual with a disability" unless he is capable of performing the essential functions of his job, with or without reasonable accommodation. 42 U.S.C. §12111 (8). Thus, the HRL requires an inquiry into whether the plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation. *See*

---

[1] The Verified Complaint in this action, originally filed in state court, makes no federal claims, under the ADA or otherwise. To the extent that such claims were intended, they would be dismissed for the same reasons as the NYHRL claim.

9

*Burton v. Metropolitan Transit Auth.*, 244 F. Supp. 2d 252, 258 (S.D.N.Y. 2003).

Here, GEICO argues, Jones has testified that he was physically unable to work from the date of his injury - January 22, 2004 - until April 2005. Def. Mem. at 8 (citing Def. 56.1 Stmt. ¶77; Pl. 56.1 Stmt. §77). If Jones could not work, GEICO reasons, he could not "perform in a reasonable manner the activities in the job or occupation" that he held, with or without reasonable accommodation, and was therefor not "disabled" for purposes of the HRL. *Id.* at 8-9.

The plaintiff asserts that this argument is "misplaced" because the defendant has disregarded its obligation to reasonably accommodate. Pl. Mem. at 10. Jones argues that the applicable standard is not whether a plaintiff is able to perform his job duties in a reasonable manner, but whether the plaintiff is able to do so "upon the provision of reasonable accommodation." *Id.* at 11. Thus, Jones continues, if a plaintiff can sufficiently establish that he could have performed his job duties with reasonable accommodation, the employer's failure to make such accommodation amounts to discharge "because of his disability." *Id.* (citing *Parker v. Columbia Pictures,* 204 F.3d 326, 332 (2d Cir. 2000); *Greenberg v. New York City Transit Auth.*, 336 F. Supp. 2d 225, 235 (E.D.N.Y. 2004). Jones suggests that a leave of absence would have been a reasonable accommodation. *Id.* at 11.

The defendant argues, as a threshold response to the accommodation issue, that "it is axiomatic" that a plaintiff must request accommodation, and that Jones never did so while he was employed. Def. Mem. at 8-9 n.3. Indeed, GEICO claims, Jones's request for a leave of absence "was made for the first time in his papers opposing this motion." Def. Reply Mem. at 2.

The extremely compressed time period between Jones's injury on January 22, 2004 and his termination on January 23, 2004, makes application of the relevant principles difficult. In

10

making their arguments, the parties jump ahead in time from the date of termination, assuming that Jones's ultimate diagnosis and alleged extended inability to work are relevant to whether he was disabled under the statute when he was fired. On that date, January 23, 2004, Jones's "disability," as far as GEICO knew, was a sprained ankle that would keep him out of work for two or three days. Whatever more serious diagnosis Jones received later from his private physicians, and whatever longer sick leave he might have needed after that diagnosis if he had remained employed by GEICO, are irrelevant to the determination of whether, on January 23, 2004, Jones was disabled. For the same reason, Jones's argument that GEICO's failure to provide him with an accommodation in the form of leave constitutes disability discrimination, in and of itself, does not persuade. At the time of Jones's termination, he had not requested a leave, and there was no reason for GEICO to offer him a leave or to think that he might need one.

In any event, the court need not determine if he was disabled on January 23, 2004, because, assuming that Jones was disabled under the statute on that date, the court finds that GEICO's proffered reason for the termination is not pretextual.

**2.) GEICO's nondiscriminatory reason for Jones's termination**

Even if Jones is assumed to have made out a prima facie case for the purposes of this motion, GEICO has articulated a legitimate nondiscriminatory reason for terminating him, and Jones has not met his burden of proffering admissible evidence that "would be sufficient to permit a rational finder of fact to infer a discriminatory motive." *McLee*, 109 F.3d at 135. As set forth *supra*, GEICO had strict policies concerning employee attendance and Jones had a long, well documented history of violations of those policies and warnings in regard to those policies, including one issued only two weeks prior to his termination. GEICO claims that it fired him

because of that history and his failure to call in on January 23 despite the recent warning. On the record before it, the court finds that GEICO has thus articulated a legitimate, non-discriminatory reason for the termination.

Once a defendant has proffered such a reason, "the presumption of discrimination created by the prima facie case drops out of the analysis, and the defendant 'will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination.'" *Mario v. P&C Food Mkts, Inc.,* 313 F.3d 758, 767 (2d Cir. 2002) (quoting *James v. New York Racing Ass'n,* 233 F.3d 149, 154 (2d Cir. 2000)). The plaintiff is thus afforded an opportunity to "'prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination.'" *Faruq*, 2006 U.S. Dist. LEXIS 4676 at *14 (quoting *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981)). "The plaintiff must produce . . . sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action]." *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir. 2000) (quotations and citations omitted, brackets in original). In determining whether the plaintiff has met this burden, the court "must examine the entire record and determine whether, at trial, the trier of fact could reasonably find that the defendant's behavior was intentionally discriminatory." *Birdsong,* 2005 U.S. Dist. LEXIS 29058 at *11-12 (citing *Schnabel v. Abramson,* 232 F.3d 83, 90 (2d Cir. 2000). "An employer is entitled to summary judgment only if its proffered nondiscriminatory reason is conclusive upon the face of the record." *Id.* at *12 (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148 (2000).

Jones argues that the reason advanced by GEICO is a pretext. He asserts that there is a genuine issue of material fact as to whether the requirement to call in applied to him on January 23, 2004 because the call-in requirement applied to unscheduled leave, and he believed that his leave was scheduled. *See* Pl's Mem. at 15-19. He points to deposition testimony that, in his view, "raises very real questions as to whether plaintiff's absence was even the type of unscheduled absence which required a call-in," and argues that the question of whether a call-in was required "supports plaintiff's assertion that there is an issue of fact as to whether defendant's reliance on plaintiff's failure to call-in was pretextual or legitimate." *Id.* at 17.

Viewing the facts in the light most reasonable to Jones, the court accepts, for the purposes of this motion, that the call-in policy applied only to unscheduled absences, and that a question of fact exists as to whether Jones's absence on January 23 was unscheduled and whether GEICO misapplied its own call-in policy. This does not mean, however, that a question of fact also exists in regard to whether the reason advanced by GEICO is pretextual and whether GEICO's real motive was discriminatory. Improper application of GEICO's policy, that is, firing an employee for failing to call in when he wasn't required to, is not a violation of the New York Human Rights Law. Moreover, it does not, without more, suggest that the "real" reason for the termination was, in whole or in part, discrimination based on Jones's alleged disability. Some other evidence would be required in order for Jones to meet his burden of providing evidence that "allows for a reasonable inference of discrimination." *Bickerstaff,* 196 F.3d at 448. For example, Jones might have offered evidence that other, non-disabled employees were allowed to violate the attendance and call-in policies as much as he did without adverse employment actions. He has not done so. Nor has he pointed to any other evidence that would "allow a

rational finder of fact to infer a discriminatory motive." *McLee,* 109 F.3d at 135.

Jones's sole allegation in response to GEICO's stated reason is that GEICO misapplied its own policy, which is insufficient to raise an issue of pretext. Jones admits that he was, during his employment, in violation of the attendance code, that he was repeatedly informed of his violations and warned, that the most recent warning had come just two weeks prior to his firing, and that he failed to call in on January 23, 2004 even though no one had told him that he did not have to. His employment record, including his own admissions, thus establishes, for nondiscriminatory reasons, that his attendance was not up to GEICO's expected standards and was not satisfactory. We conclude, as did the court in *McLee*, that "the record as a whole, including . . . [the plaintiff's own admissions], taken in the light most favorable to . . . the party opposing summary judgment, establishes that his performance was unsatisfactory." *McLee*, 109 F.3d at 135. Added to this is the unrefuted fact that, at the time Jones was fired, GEICO understood his disability to be a sprained ankle requiring a two or three day absence.

In short, the record amply demonstrates that GEICO had a legitimate, nondiscriminatory reason for firing Jones based on his poor attendance history, and the court will not second guess GEICO's decision. *See* Def. Reply Mem. at 4. The Second Circuit has observed on several occasions that the courts are not the forum for non-discriminatory personnel appeals and should not second guess employers' business judgments made in good faith. *See, e.g., Alfano v. Costello,* 294 F.3d 365, 377 (2d Cir. 2002); *Byrnie v. Town of Cromwell Bd. of Educ.,* 243 F.3d 93, 103 (2d Cir. 2001); *Gallo v. Prudential Res. Servs., L.P.,* 22 F.3d 1219, 1226 (2d Cir. 1994).

On this record, drawing all reasonable inferences in favor of Jones, the court finds that he has failed to raise a genuine issue of material fact as to whether GEICO's legitimate, non-

discriminatory reasons for demoting him were a pretext for discriminatory reasons, and GEICO is entitled to summary judgment.

Dated: Central Islip, New York  **SO ORDERED:**
       May 8, 2006

                                   /s/ William D. Wall
                                   WILLIAM D. WALL
                                   United States Magistrate Judge